Filed 8/21/25  In re E.T. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re E.T., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. H.H., Defendant and Appellant. | E085764 (Super. Ct. No. DPRI2200176) OPINION |

APPEAL from the Superior Court of Riverside County.  Walter H. Kubelun, Judge.  Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

1

I.

INTRODUCTION

This is defendant and appellant H.H.'s (Father) second appeal. Father appeals the March 19, 2025, orders denying his Welfare and Institutions Code section 388[1] petition and terminating parental rights (§ 366.26). Father contends the juvenile court erred in denying him an evidentiary hearing on his 388 petition, in which he requested the court to change a November 29, 2023, order denying him reunifications services and *Kelsey S.*[2] father status. Father also argues that the Department of Social Services (DPSS) failed to assess him for additional visits with his daughter, E.T. (born in 2022), in violation of his due process right to develop a relationship with E.T.

Father requests this court to reverse the denial of his 388 petition and termination of parental rights, and direct the juvenile court to hold a full evidentiary hearing on his 388 petition. Father also requests this court to order DPSS to conduct an assessment on whether additional, liberalized visitation would be appropriate. We reject Father's contentions and affirm the order entered on March 19, 2025, denying Father's 388 petition. We also affirm the order terminating parental rights.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*).

II.

FACTS AND PROCEDURAL BACKGROUND[3]

On November 17, 2022, DPSS received an immediate response referral alleging general neglect. Mother, who tested positive for fentanyl, gave birth to E.T., who suffered from severe drug withdrawal symptoms requiring medical intervention. Mother admitted to using fentanyl daily and methamphetamine throughout her pregnancy. She disclosed she had a 10-year history of abusing opioids, which included using fentanyl daily for the past five years. Before that, she used prescription drugs and heroin. Mother failed to complete any drug rehabilitation programs. E.T. remained hospitalized until January 2023, while receiving morphine to manage her withdrawal symptoms. Within hours of giving birth to E.T., Mother began experiencing drug withdrawal symptoms and left the hospital against medical advice.

A. *Juvenile Dependency Petition*

During an investigative interview on November 17, 2022, Mother identified Father as E.T.'s father and said he was aware of Mother's pregnancy but not of E.T.'s birth. She also stated that Father was residing in San Diego, but she refused to provide his phone number and said she did not want him contacted. Mother lived with maternal grandfather

---

[3] The facts and procedural background, beginning in November 2022, through the November 29, 2023, hearing on Father's 388 petition, are taken from our previous opinion in this case (E082721), entered on November 21, 2024. A more detailed summary of the facts is included in that opinion.

(MGF). MGF reported that Mother could not possibly care for a baby because of her use of fentanyl.

Because of the severity of E.T.'s drug withdrawal symptoms, Mother's drug addiction and unresolved drug use while pregnant, Mother's failure to engage in substance abuse services, and Father's absence, DPSS placed E.T. in protective custody. At the detention hearing on November 23, 2022, the court ordered E.T. detained from her parents, with supervised visitation for Mother.

B. *Jurisdiction/Disposition Hearing*

During the contested jurisdiction hearing on January 5, 2023, the court continued the contested jurisdiction hearing to January 25, 2023. At the continued hearing, the court ordered family reunification services for Mother and denied them for Father, who still had not been located.

C. *Six-Month Status Hearing Report*

On January 12, 2023, E.T. was discharged from the hospital and placed with maternal aunt, M.A. Father, whose whereabouts remained unknown, was denied services in January 2023. On May 29, 2023, Father texted DPSS for the first time and requested visitation with E.T. DPSS responded that the court had ordered a DNA paternity test for him. DPSS requested Father to provide his date of birth, address, and social security number, which were needed for a paternity test referral. Father did not respond. On June 7, 2023, DPSS sent Father another text requesting Father's personal information for the paternity test referral. On June 13, 2023, he responded.

4

Meanwhile, Mother failed to engage in reunification services. She was unwilling to enter substance abuse treatment and declined detox treatment. She also declined to participate in a residential program.

DPSS concluded in the June 2023, six-month status report that Mother had not mitigated the issues that led to E.T. being placed in protective care, her unresolved substance abuse negatively affected her ability to care for E.T., and Mother failed to consistently visit E.T. As to Father, DPSS reported that the possibility of placing E.T. in Father's care "is nonexistent" because he had failed to provide his current location, he had not maintained contact with E.T., and he had not submitted to DNA paternity testing. DPSS concluded it was in E.T.'s best interest to terminate Mother's reunification services and set a section 366.26 hearing.

Father appeared in court for the first time at the six-month review hearing on July 10, 2023. The court appointed counsel for him and continued the hearing to allow him to complete paternity testing. On August 14, 2023, Father reported that he missed his paternity test and was waiting to talk to his attorney. On September 6, 2023, Father completed paternity testing, which showed a 99.99 percent probability that he is E.T.'s biological father.

During the contested six-month review hearing on September 18, 2023, the court ordered that E.T. remain with M.A., terminated Mother's reunification services, set the matter for a section 366.26 hearing, and found that DPSS had made diligent efforts to

5

locate Father.  The court ordered supervised visitation for Father upon completing paternity testing.

D. *388 Petition Filed on September 27, 2023*

On September 27, 2023, Father filed a JV-180 form petition (388 petition) requesting the court to change the November 23, 2022, order finding Father was an alleged father.  Father requested *Kelsey S.* father status and reunification services.  Following a hearing on Father's 388 petition and testimony by Father on November 29, 2023, the juvenile court denied his 388 petition.  The juvenile court found that Father was E.T.'s biological father but was not a *Kelsey S.* father and denied reunification services for Father.

Father appealed the November 29, 2023, order, and this court ordered stayed the section 366.26 hearing, pending this court's determination of Father's appeal (E082721).  On November 21, 2024, this court issued an opinion affirming the November 29, 2023, orders denying Father's 388 petition and *Kelsey S.* father status (E082721).  This court also denied Father's writ petition requesting reversal of the November 29, 2023, orders, and the jurisdictional and dispositional findings and orders as to Father.

E. *388 Petition Filed on April 22, 2024*

On January 2, 2024, DPSS filed an addendum report and preliminary adoptions assessment report, which stated that E.T. was placed with M.A. on January 12, 2023, upon release from the hospital.  E.T. had been living with M.A. ever since then.  E.T. reportedly was happy, healthy, and doing well in her prospective adoptive home.  DPSS

recommended proceeding with adoption. DPSS reported that Father had participated in monthly, supervised visits with E.T.

At the section 366.26 hearing on January 17, 2024, Father requested additional visits. His attorney acknowledged Father had no change of circumstances. The juvenile court continued the hearing to February and ordered DPSS to assess if it was appropriate for Father to have additional contact with E.T. The juvenile court authorized, but did not order, additional time for Father.

DPSS filed an additional addendum report on February 15, 2024, stating that Father was appropriately participating in supervised, monthly visits. DPSS concluded that Father had not demonstrated a change of his current circumstances such that he could care for E.T. Meanwhile, E.T. continued to stabilize and thrive in M.A.'s home and was closely bonded to M.A. and her family. DPSS recommended termination of parental rights, with a permanent plan of adoption by M.A.

At the contested section 366.26 hearing on February 22, 2024, the juvenile court continued the hearing because of the pending appeal of the previous writ petition order on November 29, 2023. In April 2024, DPSS filed another addendum report, stating that Father and paternal grandmother (PGM) participated in appropriate monthly visits with E.T., but Father had not shown a change of circumstances showing he was able to provide care for E.T.

7

On April 22, 2024, Father filed a 388 petition requesting the juvenile court to vacate the November 29, 2023, order and grant him reunifications services, *Kelsey S.* father status, and unmonitored and overnight visits. Father stated in his petition that granting his petition was in E.T.'s best interest because Father did not pose a safety risk to E.T., he was financially stable, he had stable housing, and he had a dependable support system. Father stated in his supporting declaration that E.T. was very affectionate with him, and that they had developed a strong bond, but the current visitation was unnecessarily restrictive. As a consequence, Father was prevented from further developing his relationship with E.T. Attached to the 388 petition were also supporting photographs and declarations by Father's sister (PA), PGM, and Father's brother.

At the hearing on April 24, 2024, the juvenile court stated it was not inclined to relitigate the *Kelsey S.* issue. Because the 388 petition raised additional issues, the court set the matter for a hearing on the same date as the section 366.26 hearing on July 17, 2024, and directed DPSS to submit an addendum report.

DPSS reported in the July 12, 2024, addendum report that on May 23, 2024, DPSS conducted a home evaluation of Father's home and reported it was safe, and had a crib and baby supplies. DPSS further reported that Father had not participated in any of E.T.'s medical appointments and was "adamant in denying responsibility for his lack of engagement with the child, which placed her at risk of abuse." Father reportedly failed to become involved in E.T.'s life until May 29, 2023, despite DPSS's attempts to locate Father, and never contacted DPSS to receive updates on E.T.'s health. At the 388

8

petition hearing on July 17, 2024, the juvenile court noted that the proceedings were stayed while the appeal was pending, and therefore continued the section 366.26 hearing to November 24, 2024. Father withdrew his 388 petition without prejudice.

F. *Refiled 388 Petition Filed on September 24, 2024*

On September 24, 2024, Father refiled his 388 petition, once again requesting the juvenile court to vacate the November 29, 2023, order and grant him reunification services, *Kelsey S.* father status, and unmonitored and overnight visits. The refiled 388 petition was identical to the 388 petition filed on April 22, 2024, and withdrawn.

On October 11, 2024, the juvenile court signed a JV-183 court order, in which the court ordered "a hearing on whether the court should grant or deny an evidentiary hearing." During the hearing on October 23, 2024, counsel for DPSS stated that he had a conversation with Father, who said he would not be requesting *Kelsey S.* designation because the issue had already been litigated. Father's attorney said Father would like to testify as to the most recent updates regarding the 388 petition and present additional supporting evidence. Father stated that, although he did not withdraw his *Kelsey S.* request, he did not intend to argue it or present anything on the issue. Father agreed to a continuance of the hearing. Father also clarified that he was not withdrawing his request for placement, but would be focusing on liberalization of visits.

The trial court stated during the hearing that it was not going to deny the 388 petition outright at that time. Instead, the court set the matter for a hearing on November 14, 2024, on the ground "the best interest of the child may be promoted by the request."

9

The court stated that it would hear testimony, noting that Father wanted to testify. The court also granted DPSS leave to file an addendum responding to the 388 petition.

The juvenile court rejected DPSS's request not to set the 388 petition for an evidentiary hearing on the three issues raised in the 388 petition (*Kelsey S.* status, placement, and visitation), because they were intertwined. The court acknowledged that the *Kelsey S.* status issue had already been previously litigated and was subject to the pending appeal. Therefore, the juvenile court intended to wait to decide Father's most recent 388 petition until the appeal was decided on the 388 petition filed on September 27, 2023.

DPSS reported in its November 8, 2024, addendum that Father continued to participate in visitation with E.T. but also continued to refuse to take any responsibility for E.T.'s detention, or understand how his previous lack of engagement placed E.T. at risk of continued neglect. DPSS therefore concluded that it was in E.T.'s best interest to deny the 388 petition request to place her with Father, and for unmonitored and overnight visitation.

DPSS reported in its December 11, 2024, addendum that since the last hearing, Father had two supervised visits with E.T. on November 18, 2024, and December 9, 2024. During the most recent visit, Father displayed affection towards E.T. but E.T. did not reciprocate. When E.T. was told it was time to go, she walked to the exit without saying goodbye to Father and did not cry or appear affected. DPSS therefore recommended the court deny Father's 388 petition request, because it was not in E.T.'s

10

best interest. DPSS concluded that, although he engaged in visitation, "due to his lack of coming forward on the behalf of the child when detained she does not have [a] relationship with [Father] and does not engage with him on an emotional level. Further, [Father] continues to fail to take any responsibility for the child's detainment or understand how his lack of engagement has placed the child at risk of continued neglect."

On January 16, 2025, the juvenile court again continued the 388 petition and section 366.26 hearings, because there was still no remittitur. Father indicated that he would be requesting placement or unmonitored, overnight visits and intended to testify. Judge Kubelun, who was recently assigned to the case, stated during the hearing that, contrary to Judge Nemat's previous rulings, the court had not yet granted an evidentiary hearing on the 388 petition, and the matter was being delayed while waiting for the remittitur. Judge Kubelun therefore concluded it was premature to decide whether to grant an evidentiary hearing, adding that "If this court does grant an evidentiary hearing, then we'll set it at 1:30 p.m. [on March 19, 2025]."

Judge Kubelun then continued the 388 petition and section 366.26 hearings to March 19, 2025, with the expectation that a remittitur would be issued by then. Although the court did not state that it was denying Father's request for an evidentiary hearing, the January 16, 2025, minute order states, "motion for evidentiary hearing denied."

G. *Hearing on 388 Petition Filed on September 24, 2024*

At the 388 petition hearing on March 19, 2025, DPSS and minor's counsel requested the juvenile court to deny the petition. Father stated he was requesting *Kelsey S.* father status, placement of E.T. in his home, and visitation. Father also requested to testify. Judge Kubelun stated that the 388 petition had not been set for an evidentiary hearing, but agreed to allow Father to testify.

Father testified at the 388 petition hearing that he had visitation with E.T. 19 times, once a month for one hour, and that they had a strong bond. Father further testified that he currently had a full-time job as a technician and had arranged for childcare while he was working. Father said his house was ready and safe for E.T., with toys, books, food, bedding, a playroom, and secured electrical outlets. Father completed a six-hour parenting course and listens to parenting podcasts.

Father argued he demonstrated changed circumstances and that granting his 388 petition was in E.T.'s best interests. He further requested that, if his petition was denied, the court order legal guardianship and continue visitation, instead of terminating parental rights.

Minor's counsel opposed legal guardianship and argued there was no change of circumstances or evidence that granting the 388 petition was in E.T.'s best interests. Father's visits remained supervised and were only once a month. DPSS reported that during the December 2024 visit, E.T. did not return Father's affection and appeared to be more interested in playing with her toys than interacting with Father. At the end of the

12

visit, E.T. walked away without saying goodbye and did not appear affected. DPSS joined in minor's counsel's argument. DPSS added that it was not in E.T.'s best interests to remove her from her current home, where she was closely bonded to M.A., and place her with someone she does not know as her family. DPSS further argued that no exception to adoption applied and there was no evidence termination of parental rights would be detrimental to E.T. DPSS therefore urged the court to find E.T. adoptable and terminate parental rights.

After hearing oral argument, the juvenile court noted that this court affirmed the juvenile court's finding that Father was not a *Kelsey S.* father, and that E.T. had closely bonded with her caregiver during the eight-month period at the beginning of her life, before Father became involved with her. The juvenile court stated: "There's a reason why these cases are six-month cases when the minors are under the age of three. It's because they tend to bond, and it's important to engage in services in that first six months as the court of appeals has pointed out. The father did not do so." The juvenile court added that Father knew Mother was pregnant with E.T., he learned Mother gave birth to E.T. six days after the birth, he knew a social worker was involved, and he knew by early January 2023, that E.T. was living with M.A., not Mother. Nevertheless, during the first six to eight months of E.T.'s life, he did not make a concerted effort to become involved with E.T. and assist with her care and financial support.

The juvenile court concluded that it was not in E.T.'s best interests to be removed from the only home she had ever known since her birth. The juvenile court also found there were no changed circumstances since the November 29, 2023, order denying Father's first 388 petition. The juvenile court further found that the parental benefit exception to adoption did not apply. After denying Father's 388 petition, the court conducted the 366.26 hearing and terminated parental rights.

Father filed a notice of appeal of the March 19, 2025, orders denying his 388 petition and terminating parental rights.

III.

EVIDENTIARY HEARING ON 388 PETITION

Father contends that he was entitled to an evidentiary hearing on his 388 petition, and the court abused its discretion by depriving him of such a hearing on March 19, 2025. We disagree. Father received a full evidentiary hearing.

A. *Law Applicable to 388 Petitions*

"A juvenile court dependency order may be changed, modified, or set aside at any time. (§ 385.) A parent may petition the court for such a modification on grounds of change of circumstance or new evidence. (§ 388, subd. (a).) The parent, however, must also show that the proposed change would promote the best interests of the child. (§ 388, subd. (a)(2); *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) [¶] Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion. (*In*

14

*re Stephanie M.* (1994) 7 Cal.4th 295, 318.) '. . . "[']The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced  from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"'  (*Id.* at pp. 318-319.)"  (*In re J.C.* (2014) 226 Cal.App.4th 503, 525-526.)

"The juvenile court has discretion whether to provide a hearing on a petition alleging changed circumstances.  But in doing so, 'there are safeguards to prevent arbitrariness in precluding such hearings.  Specifically, a petition must be liberally construed in favor of its sufficiency (Cal. Rules of Court, rule 1432(a)) and a hearing may be denied only if the application fails to reveal any change of circumstance or new evidence which might require a change of order.  Only in this limited context may the court deny the petition ex parte.  (Rule 1432(b).)'  [Citation], fn. omitted.)  '"Thus, if the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing."'  [Citations.]  '"The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing."'  [Citations.]  Indeed, to be entitled to a hearing on her petition, appellant needed only to show 'probable cause'; she was not required to establish a probability of prevailing on her petition.  [Citations.]"  (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431-32.)

B. *Discussion*

Contrary to Father's contention, the record shows the court held a full evidentiary hearing on his section 388 petition on March 19, 2025, and did not summarily deny the petition or merely conduct a prima facie hearing to determine whether an evidentiary hearing should be held.

1. Whether the 388 Petition Hearing Was a Prima Facie Hearing or Evidentiary Hearing

On October 23, 3034, Judge Nemat continued the 388 petition hearing because of a pending appeal in this case (E082721). In doing so, Judge Nemat said that she was setting a "full hearing" on the petition and giving DPSS "an opportunity to file a response is so they can address each of the three issues before the Court makes a ruling on each of the three issues." The court added that, although DPSS had requested the court not hold an evidentiary hearing on the 388 petition, the issues were "to some degree intertwined." The three issues raised in the 388 petition were (1) whether Father was a *Kelsey S.* father, (2) whether Father was entitled to placement of E.T. with him, and (3) whether Father was entitled to reunification services and liberalized visitation. The juvenile court stated that it was not inclined to hear or decide the *Kelsey S.* issue. The JV-183 court order, signed on October 23, 2024, stated that the juvenile court ordered "a hearing on the form JV-180 request because the best interest of the child may be promoted by the request."

16

However, as Father notes, during the continued 388 petition hearing on January 16, 2025, Judge Kubelun stated that the juvenile court had not yet granted an evidentiary hearing, and Father's request for an evidentiary hearing was premature. Therefore, Judge Kubelun denied the request at that time. The court clarified that, "I'm not saying I'm not going to grant an evidentiary hearing. I'm just saying it's premature at this point in time." The court continued the 388 petition and 366.26 hearings to March 19, 2025.

During the 388 petition and 366.26 hearings on March 19, 2025, DPSS submitted for consideration DPSS status reports and addendums, and requested the juvenile court to deny Father's 388 petition. Minor's counsel also requested the court to deny the petition. Father requested to testify at the 388 petition hearing, and stated that he was not requesting status as a *Kelsey S.* father because this court recently held that Father is not a *Kelsey S.* father (E082721). Father said he was only requesting the juvenile court to grant placement of E.T. with him, as her biological father, or, alternatively, liberalized unmonitored and overnight visits, with a permanent plan of custody.

In response, the court stated that, although it did not previously set the hearing for an evidentiary hearing, the court would allow Father to testify as to the issue of changed circumstances. As to *Kelsey S.* father status, the juvenile court stated that the issue was already decided by this court, which affirmed the juvenile court's finding that *Kelsey S.* father status did not apply. Father then testified and was cross-examined. The court also received evidence attached to Father's 388 petition, which included photos of E.T. with Father, Father's home, items Father purchased in the event E.T. was placed in his home, a

17

2023 W-2 earnings statement for Father, one of Father's paystubs, and Father's home rental/lease agreement. In addition, attached were declarations by Father's sister (PA), E.T.'s paternal grandmother (PGM), and Father's brother. Father also submitted additional photographs at the 388 petition hearing.

After Father testified, the court heard oral argument from the parties. Father's attorney argued that he established a change in circumstances based on his commitment and consistency in visiting E.T. He also asserted that he had stable employment and had prepared his home for E.T. to live there. Father added that he had taken an online parenting course, and he believed his visits with E.T. were "exceptional," resulting in Father and E.T. developing a "strong significant" bond. Father further argued that it was in E.T.'s best interest to be placed with him because he was her biological father.

Attorneys for the minor, Mother, and DPSS all disagreed, arguing Father had not established changed circumstances or that it was in E.T.'s best interests to grant the 388 petition and remove her from her stable home environment and place her with someone she did not know well. No mention was made that the court was conducting only a prima facie hearing. After hearing Father's testimony and argument by all parties on the 388 petition, the juvenile court denied the petition, finding that there was "no significant change in circumstances and parental bonding does not exist."

Instead of signing an order that Father's 388 petition was summarily denied, the court signed form JV-184, entitled "Order After Hearing on Form JV-180, Request to Change Court Order," which stated the court found and ordered that, "[a]fter reading and

18

considering the Request to Change Court Order "and considering the evidence at the hearing held on . . . 03-19-2025 . . . ," the request was denied. This order indicates that the juvenile court conducted a full evidentiary hearing on the 388 petition, and did not summarily deny it or conduct a prima facie hearing on whether to grant an evidentiary hearing.

Although the court did not expressly state that it was proceeding with a full evidentiary hearing on the 388 petition, the JV-184 order and the totality of the circumstances demonstrate that the hearing was a full evidentiary hearing. During the 388 petition hearing on March 19, 2025, the court permitted Father to testify, permitted him to submit additional photos, heard oral argument from all of the parties and, as stated in the JV-184 order, "consider[ed] the evidence at the hearing" and then denied the "Request to Change the Court Order." The signed order makes it clear the order was not merely denying a prima facie hearing on whether to grant an evidentiary hearing. In addition, after the court conducted an evidentiary hearing and considered the 388 petition based upon the totality of the evidence, the court denied the petition without any mention of limiting the hearing to the prima facie stage of only considering whether to grant an evidentiary hearing. The record therefore does not support such a conclusion.

2. Whether Father Received a Full Evidentiary Hearing

Father argues that the limited nature of the prima facie hearing was not a full evidentiary hearing on the merits. We disagree. Father received a full evidentiary hearing.

19

A fair trial requires "a full and fair opportunity to the parties to *present all competent, relevant, and material evidence* bearing upon any issue properly presented for determination. [¶] . . . To this end a trial judge should not determine any issue that is presented for his consideration until he has heard all competent, material, and relevant evidence the parties desire to introduce." (*Shippey v. Shippey* (1943) 58 Cal.App.2d 174, 177, italics added; see also *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1357-1358.) "Ordinarily, parties have the right to testify in their own behalf [citation], and a party's opportunity to call witnesses to testify and to proffer admissible evidence is central to having his or her day in court." (*Elkins v. Superior Court*, *supra*, at p. 1357.)

As we explained above, Father received a full evidentiary hearing, and any objections on appeal to the robustness of the hearing were forfeited by Father's failure to either object during the 388 petition hearing or request the introduction of additional evidence. He also did not request a continuance for the purpose of allowing him to introduce additional witness testimony or documentary evidence.

Because Father had the opportunity during the 388 petition hearing to object and request the introduction of additional evidence, but failed to do so, he forfeited any objections to such deficiencies in the hearing. (See *In re Riva M.* (1991) 235 Cal.App.3d 403, 411-412 [party's failure to object waives appellate review]; *In re Dakota S.* (2000) 85 Cal.App.4th 494, 501 ["""[I]t is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial."""].) There is nothing in the record that shows that the court prohibited or

20

prevented Father from presenting additional evidence. Father asserts that had there been a full evidentiary hearing, he would have called additional witnesses, including PA and PGM. Yet even though they were both present at the hearing, he did not request that they be permitted to testify.

Father could have requested the court to allow him to introduce additional evidence and introduce additional witness testimony, or he could have requested a continuance of the hearing for this purpose. He, therefore, is now precluded from belatedly complaining that the court deprived him of introducing additional evidence and witness testimony, when he never asked the court to allow him to do so during the 388 petition hearing.

We conclude that, contrary to Father's contention that he was denied due process by the court not granting him an evidentiary hearing, the record shows that Father received a full evidentiary hearing. Furthermore, Father forfeited any objections he could have raised, but failed to assert during the 388 petition hearing.

IV.

NONPERFORMANCE OF VISITATION ASSESSMENT

Father contends the DPSS's failure to assess him for additional visits, as directed by the juvenile court, violated his due process opportunity interest in developing a relationship with E.T.

"The biological connection between father and child is unique and worthy of constitutional protection if the father grasps the opportunity to develop that biological

21

connection into a full, and enduring relationship." (*Kelsey S.*, *supra*, 1 Cal.4th at p. 838.) Therefore, "a biological father has a constitutionally cognizable opportunity interest in developing a relationship with his child." (*Id*. at p. 844.) "[A] state may not deny a biological parent the opportunity to establish a protected custodial relationship with his or her child." (*Id*. at p. 843.)

A. *Procedural Background*

During the contested six-month review hearing on September 18, 2023, the court ordered supervised visitation for Father upon completing paternity testing. On September 6, 2023, Father completed paternity testing, and on November 29, 2023, the juvenile court found that Father was E.T.'s biological father. Thereafter, Father had supervised visitation for one hour, once a month.

At the section 366.26 hearing on January 17, 2024, Father requested additional visits. The juvenile court stated in response: "I will not order but authorize additional time. The Department is to assess whether it's appropriate to allow father additional contact with the minor."

In February 2024, DPSS filed an additional addendum report stating that Father was appropriately participating in supervised monthly visits. DPSS concluded that Father had not demonstrated a change of his current circumstances such that he could care for E.T. Meanwhile, E.T. continued to stabilize and thrive in M.A.'s home and was closely bonded to M.A. and her family. DPSS recommended termination of parental rights, with a permanent plan of adoption by M.A.

In April 2024, DPSS filed another addendum report, stating that Father participated in appropriate monthly visits with E.T., but Father had not shown a change of circumstances showing he was able to provide care for E.T.

On April 22, 2024, Father filed a 388 petition requesting the juvenile court to vacate the November 29, 2023, order and grant him reunifications services, *Kelsey S.* father status, and unmonitored and overnight visits. Father stated in his supporting declaration that E.T. was very affectionate with him, and that they had developed a strong bond, but the current visitation was unnecessarily restrictive. As a consequence, Father was prevented from further developing his relationship with E.T.

DPSS reported in its November 8, 2024, addendum that Father continued to participate in visitation with E.T. but also continued to fail to take any responsibility for E.T.'s detention, or understand how his lack of engagement placed E.T. at risk of continued neglect. DPSS therefore concluded that it was in E.T.'s best interest to deny the 388 petition request for placement with Father and for unmonitored and overnight visits.

DPSS reported in its December 11, 2024, addendum that Father had two supervised visits with E.T. on November 18, 2024, and December 9, 2024. During the most recent visit, Father displayed affection towards E.T. but E.T. did not reciprocate. When E.T. was told it was time to go, she walked to the exit without saying goodbye to Father and did not cry or appear affected. DPSS again reported that Father continued to fail to understand how his lack of engagement with E.T. placed her at risk and was

23

neglectful. He reportedly was "adamant in denying any responsibility for his lack of engagement with the child, which placed her at risk of abuse." DPSS therefore recommended the court deny Father's 388 petition request because it was not in E.T.'s best interest.

During the continued 388 petition hearing on January 16, 2025, Father indicated that he would be requesting placement or unmonitored, overnight visits. At the 388 petition hearing on March 19, 2025, Father requested *Kelsey S.* father status, placement of E.T. in his home, and liberalized visitation. Father testified that he had visitation with E.T. 19 times, once a month for one hour, and they had a strong bond. E.T. calls him daddy. He did not object to DPSS not performing a visitation assessment, as ordered on January 17, 2024.

B. *Discussion*

The court ordered a visitation assessment at the hearing on January 17, 2024. Thereafter, Father did not object during any of the subsequent hearings to DPSS not assessing him for additional visitation, or assert that the omission violated his right to due process. He therefore forfeited his objection to DPSS not conducting a visitation assessment. (*In re Riva M.*, *supra*, 235 Cal.App.3d at pp. 411-412; *In re Dakota S.*, *supra*, 85 Cal.App.4th at pp. 501-502]; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330 (*Lorenzo C.*) [father waived his objection to the court not ordering completion of a bonding study by not asking the juvenile court to order it].)

In *Lorenzo C.*, *supra*, 54 Cal.App.4th at page 1338, a request was made that the caretakers schedule a psychological evaluation for the minor.  The psychological evaluation was not performed.  Because the psychological evaluation would have included a bonding assessment, the father argued that the juvenile court abused its discretion by not ordering the completion of a bonding study before terminating his parental rights.  (*Ibid*.)  The father asserted that such an assessment would have provided information which would have compelled the juvenile court to find that termination of parental rights would be detrimental to his son.  (*Ibid*.)

The court in *Lorenzo C.*, *supra*, 54 Cal.App.4th at page 1338, concluded that the father's argument was "neither cognizable nor meritorious."  The *Lorenzo C.* court agreed "with the department that the father waived the issue for purposes of appeal by not asking the juvenile court to order a bonding study.  Many dependency cases have held that a parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court. . . .  As some of these courts have noted, any other rule would permit a party to trifle with the courts.  The party could deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable."  (*Id*. at pp. 1338-1339.)

Because Father did not object in the juvenile court to DPSS not performing the visitation assessment and did not assert that the omission was a due process violation, he forfeited these issues on appeal.

25

## V.

## DISPOSITION

The March 19, 2025, order denying Father's 388 petition is affirmed.  The order terminating parental rights is accordingly also affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.